UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:22-CV-00048-GNS-LLK

DEAN DOME and RUTH BOOHER											PLAINTIFFS

v.

STATE FARM FIRE AND CASUALTY
COMPANY														DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant's Motion for Summary Judgment (DN 14). For the reasons that follow, the motion is **GRANTED**.

### I. BACKGROUND

Plaintiffs Dean Dome ("Dome") and Ruth Booher ("Booher") (jointly "Plaintiffs") were insured by a homeowners' insurance policy issued by Defendant State Farm Fire and Casualty Company ("State Farm"). (*See* Def.'s Mot. Summ. J. Ex. H, DN 14-9 [hereinafter Policy Record]). An issue with Plaintiffs' air conditioning unit created a leak that caused water damage to Plaintiffs' home. (*See* Compl. ¶¶ 4-5, DN 1-1). After Plaintiffs submitted a claim to State Farm for their loss, State Farm determined that three policy exclusions applied to Plaintiffs' loss and declined coverage. (Compl. ¶ 6; *See* Def.'s Mot. Summ. J. Ex. G, DN 14-8). Plaintiffs then initiated this lawsuit for breach of contract, common law bad faith, and bad faith under KRS 304.12-230 in McCracken Circuit Court (Kentucky). (Compl. ¶¶ 7-9). State Farm removed the action to this Court asserting diversity jurisdiction. (Notice Removal 2, DN 1).

1

## II. JURISDICTION

The Court has subject-matter jurisdiction over this action through diversity jurisdiction because there is complete diversity between the parties and the amount in controversy exceeds the sum of $75,000.00. *See* 28 U.S.C. § 1332.

## III. STANDARD OF REVIEW

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of stating the basis for the motion and identifying evidence in the record that demonstrates an absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the non-moving party must then produce specific evidence proving the existence of a genuine dispute of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986).

While the Court must view the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the non-moving party must present specific facts proving that a genuine factual dispute exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient" to overcome summary judgment. *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

State Farm argues that it is entitled to summary judgment because the insurance claim was based on losses excluded under Plaintiffs' insurance policy. (Def.'s Mem. Supp. Mot. Summ. J. 1-2, DN 14-1 [hereinafter Def.'s Mem.]). State Farm further argues that because the policy exclusions preclude coverage, Plaintiffs' bad faith claims fail as a matter of law. (Def.'s Mem. 15-16). In response, Plaintiffs argue that the reasonable expectations doctrine overcomes the policy exclusions and that the exclusions do not apply. (Pls.' Resp. Def.'s Mot. Summ. J. 2-8, DN 17 [hereinafter Pls.' Resp.]).

### A. Policy Exclusions

State Farm contends that the homeowners' insurance policy contained certain policy exclusions, which result in a lack of coverage for Plaintiffs' loss.

#### 1. *Seepage or Leakage Exclusion*

In relevant part, the policy's seepage and leakage exclusion provides:

> We will not pay for any loss to the property described in Coverage A that consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these: . . .
>
> f.    seepage or leakage of water, steam, or sewage that occurs or develops over a period of time:
>     (1)    and is:
>         (a)    continuous;
>         (b)    repeating;
>         (c)    gradual;
>         (d)    intermittent;
>         (e)    slow; or
>         (f)    trickling; and
>     (2)    from a:
>         (a)    heating, air conditioning, or automatic fire protective sprinkler system . . . .

(Policy Record 34).

In arguing that the exclusion is inapplicable, Plaintiffs contend that the leak did not take place over weeks and that it would have been impossible for them to detect the issue with the air conditioning unit.[1] Plaintiffs' arguments are inapplicable to the language of the exclusion. The seepage and leakage exclusion only requires that the seepage or leakage of water: (1) occur or develop over a period of time; (2) be continuous, repeating, gradual, intermittent, slow, or trickling; and (3) come from a heating, air conditioning, or automatic fire protective sprinkler system. (Policy Record 34). Plaintiffs do not dispute that their damage resulted from a water leak from their air conditioning unit. (*See* Pls.' Resp. 6). Therefore, the question is whether there is any genuine issue of material fact that the leak occurred or developed over a period of time and was continuous, repeating, gradual, intermittent, slow, or trickling. (Policy Record 34).

Wes Mariner ("Mariner") was hired to inspect and repair the condition causing the leak. (Def.'s Mot. Summ. J. Ex. C, DN 14-4). He concluded that the leak began when the air conditioning unit was installed because the air conditioning unit was not level. (Mariner Dep. 10:12-18, DN 14-5). Mariner explained that a metal drip pan beneath the air conditioning unit was catching the leak, but that the leak had been going on so long that the water rusted through the pan. (Mariner Dep. 10:3-18). Dome testified that he had purchased the house in 2015-16 and that while he lived there until the incident at issue, he had never replaced any air conditioning components. (Dome Dep. 12:25-13:6, 15:17-16:4, DN 14-2).

---

[1] Plaintiffs rely on language from *Geiman v. Northern Kentucky Water District*, No. 2:13-cv-177-WOB-CJS, 2014 WL 820069 (E.D. Ky. Mar. 3, 2014), to argue that the exclusion should not apply if the seepage or leakage was unknown to them. (Pls.' Resp. 5); *Geiman*, 2014 WL 820069, at *2. The plaintiff's knowledge was relevant in *Geiman* because the exclusion did not apply if the seepage or leakage was unknown to all insureds. *Geiman*, 2014 WL 820069, at *2. Plaintiffs have not pointed to any similar language in their policy.

4

Plaintiffs argue that the leak only occurred over the course of several days based on the testimony of Plaintiffs' son, Preston Booher ("Preston"). (Pls.' Resp. 6). Preston had lived in the house for two years before Dome discovered the leak and testified that he had never seen any water leaks in the house. (Preston Dep. 12:24-13:9). Dome testified that he checked on the house and discovered the leak "within a week to ten days" after Preston moved out. (Pls.' Resp. 4; Def.'s Reply Mot. Summ. J. 4, DN 18 [hereinafter Def.'s Reply]).[2] Even assuming that water did not actually begin dripping down from the attic until after Preston moved out, Plaintiffs have pointed to no facts that dispute Mariner's conclusion that the leak developed over the life of the air conditioning unit. Furthermore, Dome himself admitted that when he walked into the house, water was still dripping from the ceiling and that the leak "obviously had been running for several days if not a week." (Dome Dep. 33:3-8). There is no requirement in the seepage or leakage exclusion that the condition must have existed for multiple weeks. (*See* Policy Record 34). Plaintiffs have pointed to no evidence creating a genuine issue of fact that this leak developed over a period of time and was continuous. Therefore, this exclusion applies.

### 2. *Wear and Tear Exclusion*

The policy also had a wear and tear exclusion, which excludes from coverage any loss arising from "condensation or the presence of humidity, moisture or vapor that occurs or develops over a period of time . . ." and lists "wear," "tear," "corrosion," and "rust" among other potential issues. (Policy Record 34).

Plaintiffs' only argument that the wear and tear exclusion should not apply is that "it is undisputed the AC unit continued to circulate cool air throughout the . . . home until Plaintiff Dome turned it

---

[2] Both parties quote this phrase from Dome's deposition, but neither party attached as an exhibit the deposition page containing the quote. (*See* Def.'s Mot. Summ. J. Ex. A, DN 14-2; Def.'s Reply Mot. Summ. J. Ex. A, DN 18-1).

off upon discovering the leak." (Pls.' Resp. 8). Plaintiffs do not elaborate on why this fact would preclude applicability of the wear and tear exclusion. As discussed above, Plaintiffs point to no evidence disputing Mariner's testimony that the damage was caused by a prolonged leak from the air conditioner rusting through a metal drip pan. (*See* Mariner Dep. 10:3-18). Therefore, there is no genuine issue of material fact that this exclusion applies.

### 3. *Faulty Workmanship Exclusion*

The faulty workmanship exclusion excludes losses caused, directly or indirectly, by "defect, weakness, inadequacy, fault, or unsoundness" in, *inter alia*, "workmanship." (Policy Record 36-37). Plaintiffs argue that the faulty workmanship exclusion should also not apply because the air conditioner worked "for approximately seven (7) years prior to any problems occurring . . . ." (Pls.' Resp. 8). As with the wear and tear exclusion, it is not apparent why this fact would render this exclusion inapplicable. Dome even testified in his deposition that "the pan was actually faulty and rusted because of the improper placement of it." (Dome Dep. 88:1-3). Mariner testified that he believed the air conditioning unit was not installed correctly and was leaking because it was not level. (Mariner Dep. 10:3-18). Plaintiffs have failed to point to any evidence in the record to dispute the evidence that the air conditioning unit was improperly installed. Therefore, there is no genuine issue of material fact that this exclusion applies.

### 4. *Conclusion*

Having found that all three policy exclusions are applicable, there is no genuine issue of material fact that Plaintiffs' losses were excluded by their insurance policy. Accordingly, State Farm is entitled to summary judgment on Plaintiffs' claim for breach of contract.

### B.    Reasonable Expectations Doctrine

Plaintiffs also argue that State Farm's interpretation of the seepage and leakage exclusion runs afoul of the reasonable expectations doctrine.[3] (Pls.' Resp. 2-3). Plaintiffs assert, without citation, that "[i]nsureds have a reasonable expectation that a loss they incur will be covered by a homeowner's or automobile insurance policy." (Pls.' Resp. 3). Based on this assertion, Plaintiffs contend that they had a reasonable expectation that the damage to their home would be covered by the insurance policy. (Pls.' Resp. 3).

Plaintiffs mischaracterize the reasonable expectations doctrine. "In Kentucky, the doctrine of reasonable expectations provides that 'the insured is entitled to all the coverage he may reasonably expect to be provided under the policy.'" *Nat'l Union Fire Ins. Co. of Pittsburgh v. Papa John's Int'l, Inc.*, 29 F. Supp. 3d 961, 970 (W.D. Ky. July 3, 2014) (quoting *Simon v. Cont'l Ins. Co.*, 724 S.W.2d 210, 212 (Ky. 1986)). "Only an unequivocally conspicuous, plain and clear manifestation of the company's intent to exclude coverage will defeat that expectation." *Id.* at 970-71 (quoting *Simon*, 724 S.W.2d at 212). Contrary to Plaintiffs' assertion, "[r]easonable expectations are not ascertained from the subjective belief, however genuine, of the insurance application." *Id.* at 971 (quoting *Sparks v. Trustguard Ins. Co.*, 389 S.W.3d 121, 128 (Ky. App. 2012)). "[T]he test in determining reasonable expectations is based on construing the policy language as a layman would understand it, rather than considering the policyholder's subjective thought process regarding his policy." *Id.* (quoting *Sparks*, 389 S.W.3d at 128). "Only actual

---

[3] Plaintiffs also assert that the wear and tear exclusion is "vague, ambiguous, and overbroad," but they offer no argument in support of this assertion. (Pls.' Resp. 8). Therefore, the issue is deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (alteration in original) (quoting *Citizens Awareness Network, Inc. v. U.S. Nuclear Regul. Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995))).

ambiguities in the policy language will trigger the doctrine of reasonable expectations." *Id.* (quoting *Sparks*, 389 S.W.3d at 128).

In this instance, Plaintiffs' policy had a seepage or leakage exclusion, which provided:

We will not pay for any loss to the property described in Coverage A that consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these: . . .

    f.    seepage or leakage of water, steam, or sewage that occurs or develops over a period of time:
        (1)    and is:
            (a)    continuous;
            (b)    repeating;
            (c)    gradual;
            (d)    intermittent;
            (e)    slow; or
            (f)    trickling; and
        (2)    from a:
            (a)    heating, air conditioning, or automatic fire protective sprinkler system . . . .

(Policy Record 34). Plaintiffs argue that this exclusion "is very ambiguous as to what consists of a 'period of time'" within the policy exclusion for "seepage of water . . . that occurs over a period of time . . . ." (Pls.' Resp. 6 (quoting Policy Record 34)). State Farm cites to three cases where exclusions similar to the seepage or leakage exclusion were upheld. (Def.'s Mem. 10-12 (citing *Geiman*, 2014 WL 820069, at *2 (finding no ambiguity in a policy that excluded loss caused by "[c]onstant or repeated seepage or leakage of water . . . over a period of weeks, months or years . . . ." (second alteration in original)); *Blevins v. Safeco Ins. Co. of Am.*, No. 6:21-CV-114-REW-HAI, 2022 WL 19915549, at *5 (E.D. Ky. Sept. 16, 2022) (granting summary judgment based on, *inter alia*, an exclusion for losses caused by "continuous or repeated seepage or leakage of water . . . which occurs over a period of weeks, months or years."); *Probus v. Allstate Ins. Co.*, No. 2020-CA-1067-MR, 2021 WL 2753221, at *2-3 (Ky. App. July 2, 2021) (affirming summary

8

judgment based on an insurance policy that excluded losses caused by "seepage or leakage over a period of weeks, months, or years" because the damage occurred over a period of weeks)).

Plaintiffs point out that the seepage or leakage exclusion at issue here is more ambiguous than the policies in the cases State Farm cites because those exclusions specifically mentioned weeks, months, or years and that, as written in this exclusion, "[a] 'period of time' could be seconds." (Pls.' Resp. 6). Despite Plaintiffs' arguments, when read in context, the meaning of the phrase is clear. *See Kay v. Minacs Grp. (USA), Inc.*, 580 F. App'x 327, 330 (6th Cir. 2014) ("Contract language is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person *who has examined the context of the entire integrated agreement* . . . . " (alteration in original) (internal quotation marks omitted) (citation omitted)).

A sister court considered a seemingly identical policy exclusion in *Brodzinski v. State Farm Fire & Casualty Co.*, No. 16-6125, 2017 WL 3675399 (E.D. Pa. Aug. 25, 2017). *Brodzinski*, 2017 WL 3675399, at *1 ("[D]amage caused by 'continuous or repeated seepage or leakage of water' from an air conditioning system, 'which occurs over a period of time' . . . ."). The court considered the argument that the phrase "over a period of time" was ambiguous and reasoned:

> When reading "period of time" in the context of the entire exclusion—particularly the language "continuous or repeated seepage or leakage"—it is apparent that the Policy does not provide coverage for damage that occurs due to events that are continuous or repeated. In contrast, the Policy would provide coverage for damage that is caused by single, isolated events that do not occur over a period of time.

*Id.* *5. In upholding the application of the exclusion, the court concluded that "[t]here is nothing that is ambiguous about the phrase 'over a period of time' when read in the context of the entire exclusion." *Id.* at *5; *accord Smith v. State Farm Fire & Cas. Co.*, No. 19-10319-RMB-AMD,

9

2020 WL 6938432, at *6 (D.N.J. Nov. 25, 2020) (citing *Brodzinski*, 2017 WL 3675399, at *4-5) (considering the same exclusion, discussing *Brodzinski*, and reaching the same conclusion).

Likewise, the exclusion here applies to "seepage or leakage" that "occurs or develops over a period of time . . . and is: (a) continuous; (b) repeating; (c) gradual; (d) intermittent; (e) slow; or (f) trickling" and from an air conditioning system. (Policy Record 34). In its proper context, the term "over a period of time" is not ambiguous, it refers to seepage or leakage that does not occur suddenly or spontaneously as a single event.

Plaintiffs are clearly dissatisfied with these exclusions; however, their disappointment alone is insufficient to justify invocation of Kentucky's reasonable expectations doctrine. *See Papa John's Int'l*, 29 F. Supp. 3d at 971. The exclusions that State Farm relies on are an "unequivocally conspicuous, plain and clear manifestation of . . . intent to exclude coverage." *Id.* 970 (citation omitted). Therefore, the reasonable expectations doctrine does not apply.

    C.    **Plaintiffs' Bad Faith Claims**

State Farm also moves for summary judgment on Plaintiffs' claims for common law bad faith and bad faith under KRS 304.12-230. (Compl. ¶¶ 8-9). "Absent a contractual obligation, there simply is no bad faith cause of action, either at common law or by statute . . . ." *Ky. Nat'l Ins. Co. v. Shaffer*, 155 S.W.3d 738, 742 (Ky. App. 2004) (alteration in original) (quoting *Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 100 (Ky. 2000)). Having concluded that Plaintiffs' losses fell into exclusions in their insurance policy, Plaintiffs' bad faith claims fail as a matter of law. Accordingly, summary judgment is granted as to these claims.

## V.  CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (DN 14) is **GRANTED**, and the Complaint is **DISMISSED WITH PREJUDICE**.  The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge
United States District Court

February 6, 2024

cc: counsel of record